UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SCOTT STROTHER, | ) | |
| BETHANY STROTHER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00063-SEB-MJD |
| | ) | |
| STEVEN SCOTT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON QUALIFIED IMMUNITY GROUNDS**

This cause is before the Court on Defendant's Motion for Summary Judgment [Dkt. 53], filed on December 18, 2020. Plaintiffs Scott and Bethany Strother have brought this action against Defendant Detective Steven Scott pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth, Fifth,[1] and Fourteenth Amendments. Plaintiffs further seek redress under this Court's supplemental jurisdiction for state law claims including false arrest, false imprisonment, and malicious prosecution. For the reasons explicated below, we GRANT Defendant's Motion for Summary Judgment.

**Factual Background**

This action arises from an encounter between Detective Scott and Mr. Strother on December 13, 2018. Detective Scott is employed by the Indianapolis Metropolitan Police

---

[1] Plaintiffs' Amended Complaint [Dkt. 32] alleges a violation of the Fifth Amendment, but the Fifth Amendment is not discussed in any of the subsequent briefing. We therefore find that this claim has been abandoned.

Department ("IMPD") and was assisting fellow IMPD detective Marc Klonne with undercover surveillance in the 3800 block of Meridee Drive in Indianapolis to locate a homicide suspect on the day in question. Scott Dep. at 7. Mr. Strother, a United States Army veteran, resides in the 3800 block of Meridee Drive with his wife Bethany, also a plaintiff, and their three children. Strother Dep. at 11. The encounter that took place between Detective Scott and Mr. Strother occurred when Mr. Strother followed Detective Scott's SUV on Meridee Drive, which has no outlet, because Mr. Strother believed that Detective Scott's SUV was acting suspiciously. Amended Compl. ¶ 16; Dkt. 60 at 3. Once Detective Scott's SUV turned around, Mr. Strother turned his vehicle at an angle in the road in hopes of identifying the driver and obtaining a license plate number. Amended Compl. at ¶ 19.

Mr. Strother asked Detective Scott about his presence in the neighborhood three times while standing outside of and behind his vehicle. Dkt. 60 at 3. During the encounter, Mr. Strother was armed with a handgun that he carries inside of his pants. Detective Scott told Mr. Strother repeatedly to move out of the way but did not show any type of identification in the form of a badge or credentials. However, Detective Scott verbally identified himself as a police officer and flashed his concealed red and blue lights in response to Mr. Strother's inquiries. *See, e.g.*, Amended Compl. at 3–4; Dkt. 60 at 3–4. Mr. Strother testified that he eventually left his cover behind his vehicle and moved towards Detective Scott. Strother Dep. at 26–27. When Detective Scott told him to get out of the way and go back to his car, Mr. Strother responded that he "wasn't going anywhere." *Id.* at 27.

2

Mr. Strother was not satisfied with Detective Scott's self-identification as a police officer until another officer, Detective Klonne, arrived and confirmed that Detective Scott was indeed a police officer. *See* Dkt. 60 at 3–4. Based on how Mr. Strother angled his vehicle in the street as well as his overall actions toward Detective Scott, Detective Scott perceived that Mr. Strother was likely armed and believed that Mr. Strother was interfering with his ability to do his job as a police officer and detective. Dkt. 54-10 at 2. Detective Scott detained Mr. Strother in handcuffs, informed him that he was being arrested for criminal confinement, and placed Mr. Strother in the back of his vehicle. Strother Dep. at 32. When Detective Scott learned that Mr. Strother's children were home alone, he decided to release him. *Id.* at 33.

The day after the incident, Detective Scott emailed his case report to one of the deputy prosecutors to see if any charges could be filed against Mr. Strother. Dkt. 54-1. He also submitted his probable cause affidavit, photos, and other documents to a paralegal in the screening department. Dkt. 54-3 at 1; Scott Dep. at 22. After the Marion County Prosecutor's Office filed the probable cause affidavit, Marion Superior Court found probable cause to exist based on the case report filed and issued a warrant for Mr. Strother's arrest. Dkt. 54-17 at 4. Based on the arrest warrant, deputies from the Marion County Sheriff's Office searched the Strothers' home for Mr. Strother on December 18, 2018. *Id.* at 4. Detective Scott did not participate in, request, or authorize the search. Scott Dep. at 30. He was unaware that anything occurred with his probable cause affidavit until a supervisor informed of the arrest warrant on the day it was executed. *Id.*

3

At the time of the search, Mr. Strother was in Kentucky for work. Strother Dep. at 43. Mr. Strother subsequently retained a criminal defense attorney and turned himself in on December 20, 2018, where he was taken directly to his initial hearing and released on his own recognizance immediately after. *Id.* at 43–47. The criminal charges were dismissed about a year after they were filed. *Id.* at 47–48.

Although the Strothers argue a "plethora" of disputed material facts preclude summary judgment, [Dkt. 60 at 8], Defendant Scott accepts the Strothers' version of disputed facts for summary judgment purposes. Dkt. 61 at 6.[2] We will not repeat and recite the entire factual background of this encounter because the facts, even when taken in the light most favorable to Mr. Strother, entitle Detective Scott to judgment as a matter of law on the grounds of qualified immunity.

## Discussion

### I.   Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate

---

[2] In his reply brief, Detective Scott states that the "factual disputes the Strothers identify are either immaterial or nonexistent. But if the Court determines a dispute to be genuine, Det. Scott takes the Strothers' version of it for summary judgment purposes." Dkt. 61 at 6.

the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

## II.    Analysis

In this litigation, Plaintiffs allege various violations of their rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution. Although not entirely clear from Plaintiffs' complaint and summary judgment briefing, we understand Plaintiffs to allege claims for false arrest, unlawful search, and the falsification of a probable cause warrant under the Fourth Amendment and Fourteenth Amendment due process and malicious prosecution claims.  Plaintiffs also allege state law false arrest, false imprisonment, and malicious prosecution claims.  For the reasons detailed below, none of these claims survive summary judgment.

Defendant has asserted the defense of qualified immunity on all of the Strothers' federal claims against him. Dkt. 55 at 30–31; *see Estate of Williams by Rose v. Cline*, 902 F.3d 643, 651 (7th Cir. 2018) ("Qualified immunity is an individual defense available to each individual defendant in his individual capacity.") (internal quotation marks and citation omitted). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal quotation marks and citation omitted). When evaluating whether qualified immunity applies, courts must "consider two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional

right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (internal quotation marks and citation omitted). Thus, qualified immunity is appropriate "when the law, as applied to the facts, would have left objectively reasonable officials in a state of uncertainty." *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018). In other words, a government official is entitled to qualified immunity unless it can be said that "every reasonable official would have understood that what he [was] doing violate[d] [a] right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks and citation omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12 (internal quotation marks and citation omitted).

Detective Scott argues that he is entitled to qualified immunity on all Plaintiffs' federal claims because, even viewing the facts in the light most favorable to Plaintiffs, they can show no constitutional violation.  Specifically, Detective Scott asserts that: (1) there can be no claim based on false arrest because on the night in question he had probable cause (or, at the very least arguable probable cause, which is all that is required for qualified immunity purposes) to reasonably believe that Mr. Strother had committed any number of offenses, including criminal confinement, obstruction of traffic, and resisting law enforcement; (2) he cannot be held liable for any unlawful search claim because he did not initiate nor was he even present for any search of Plaintiffs' residence and thus cannot be held liable under § 1983 because he did not participate directly in the alleged constitutional violation; (3) Plaintiffs can bring no claim based on a falsified probable cause affidavit because there is no evidence that he knowingly included any

6

false or misleading information in the probable cause warrant; and (4) case law is clear

that an alleged false arrest cannot support a due process claim; and (5) there can be no

malicious prosecution claim when, as here, probable cause existed.

These arguments are well taken and supported by the case law cited by Detective

Scott.  Once a defendant raises a qualified-immunity defense, it becomes the plaintiff's

burden to defeat it. *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013). It is well-settled in

the Seventh Circuit that the party opposing summary judgment waives any argument that

he does not raise in his brief in opposition to it. *See, e.g.*, *Laborers Int'l Union v. Caruso*,

197 F.3d 1195, 1197 (7th Cir. 2003) (arguments not presented to the district court in

response to a summary-judgment motion are waived); *see also C & N Corp. v. Kane*, 756

F.3d 1024, 1026 (7th Cir. 2014).

The Strothers have failed to respond to or acknowledge Detective Scott's qualified

immunity defense as to all federal claims brought against him. To defeat Detective

Scott's qualified-immunity defense, the Strothers needed to show—for each federal claim

asserted—that (1) Detective Scott violated their constitutional rights; and (2) the right

was clearly established at the time of the challenged conduct. *Archer v. Chisholm*, 870

F.3d 603, 613 (7th Cir. 2017). "A failure to show either is fatal for the plaintiff's case,

and [the court] may begin (and possibly end) with either inquiry." *Id.* (citing *Pearson v.

Callahan*, 555 U.S. 223, 232 (2009)). The words "qualified immunity" are absent from

the Strothers' brief and the words "clearly established" are mentioned only once in

passing for the principle that evidence fabrication—when it leads to a deprivation of

liberty—violates clearly established law. Dkt. 60 at 19. The Strothers have therefore waived any argument that Detective Scott is not entitled to qualified immunity.

Because Defendant is entitled to qualified immunity, the present case cannot move forward on any of Plaintiffs' federal claims, *see Archer*, 870 F.3d at 613, and we decline to extend supplemental jurisdiction to the Plaintiffs' state law claims.

## **Conclusion**

For the reasons stated herein, Defendant's Motion for Summary Judgment [Dkt. 53] is <u>GRANTED</u>. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: _____9/30/2021_____                      _____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Martin Austin Brown
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT,
LLP
mab@rkblegalgroup.com

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT,
LLP
ard@rkblegalgroup.com

Tara Lynn Gerber
City of Indianapolis
tara.gerber@indy.gov

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT,
LLP
jfk@rkblegalgroup.com

Terrance Lamont Kinnard
KINNARD & SCOTT
tkinnard@kinnardlaw.net

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT,
LLP
ejm@rkblegalgroup.com

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
adam.willfond@indy.gov